UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JONATHAN MOSES SILVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-611 (EGS) |
| | ) | |
| AMERICAN SAFETY INDEMNITY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jonathan Silver brings this action against his former insurer, American Safety Indemnity Company ("American Safety"). Plaintiff alleges that American Safety breached the insurance policy it issued him when it refused to provide coverage for his legal expenses arising out of his former role as Executive Director of the Department of Energy's Loan Programs Office. Plaintiff also alleges American Safety breached the duty of good faith and fair dealing by the same conduct. He seeks to recover compensatory and punitive damages.

Pending before the Court is defendant's Motion for Judgment on the Pleadings and plaintiff's Cross-Motion for Partial Summary Judgment. Upon consideration of the motions, the responses and replies thereto, the entire record, and for the reasons explained below, defendant's motion is **GRANTED.**

Accordingly, because the court grants judgment on the pleadings, plaintiff's cross motion for summary judgment is **DENIED** as moot.

I.  **BACKGROUND**

**A. Plaintiff's Employment, and the Policy Purchased**

Plaintiff Jonathan Silver is a resident of the District of Columbia. Compl. ¶ 2.  Defendant American Safety is an Oklahoma corporation with its principal place of business in Georgia. Compl. ¶ 3, Answer ¶ 3. Defendant is licensed to and does transact business in the District of Columbia.  Compl. ¶ 3.

In November 2009, plaintiff was appointed Executive Director of the Loan Programs Office ("LPO") of the United States Department of Energy by Secretary of Energy, Steven Chu. Compl. ¶ 6.  While serving in this position, plaintiff purchased from American Safety a Federal Employee Professional Liability Policy with certificate number P0169PF21031400 (the "Policy"). Compl. ¶ 10.  The Policy Period was March 11, 2011 to March 11, 2012. Compl. Ex. A, Certificate of Insurance.  The Policy provides two types of coverage.  Section I provides "civil suit coverage," and Section II provides "administrative and criminal legal defense expense coverage."  Compl. Ex. A, Policy §§ I, II. Only Section II of the Policy is at issue in this case. Coverage under Section II is provided as follows:

> The Company shall select counsel and pay the costs of defense . . . on each valid "Insured Member's" certificate arising out of any "disciplinary proceedings", "judicial

2

sanctions proceedings", "criminal proceedings", or any
investigations into the "Insured Member's" alleged
misconduct, instituted against the Insured Member from any
act, error or omission in Professional Services rendered or
which should have been rendered in the "Insured Member's"
professional capacity as a full or part-time Employee of
the United States Government.

Policy § II.A. The Policy defines "Insured Member" as:

Any full or part time civilian federal employee meeting the
definition of 5 U.S.C. § 2105(a) . . . .

*Id.* § IV.H.

Finally, the Policy places conditions on coverage under Section I and, separately, under Section II. Policy § VII. Among the conditions for Section II Coverage is:

Benefits under the **Administrative and Criminal Legal Defense Coverage** cease when the "Insured Member" no longer meets the definition of "Insured Member".

Policy § VII.B (emphasis in original) (hereinafter "Condition B"). The Policy does not contain a similar condition for Section I coverage.

   **B. Plaintiff's Position at the Department of Energy, Departure from the Government and Government Investigations into Solyndra LLC**

Mr. Silver worked as Executive Director of the LPO from November 2009 to October 2011. Compl. ¶¶ 6, 9. In that post, Plaintiff oversaw certain loan programs created by the 2005 Energy Policy Act and 2009 Energy Recovery Act, intended to support commercial deployment of clean and renewable energy. Compl. ¶ 7. During plaintiff's tenure at LPO, one of the solar

3

energy companies that had been awarded a loan guarantee, Solyndra LLC, began facing financial difficulties. Compl. ¶ 23. It could not meet its loan obligations, and in September 2011 it filed for bankruptcy. *Id.* Shortly thereafter, a number of investigations into the loan guarantee program and its loan to Solyndra were initiated by various governmental entities. Compl. ¶ 25.

In October 2011, Mr. Silver left his position at the Department of Energy. Compl. ¶ 9. In November 2011, the FBI requested that he make himself available to be interviewed regarding a government investigation into the loans to Solyndra. Compl. Ex. B, Oct. 3, 2012 letter from J. Murray to A. Vergnetti ("Oct. 3, 2012 Letter"). In December 2011, the White House made a similar request. *Id.* Finally, in a letter dated July 12, 2012, the U.S. House of Representatives Committee on Oversight and Governmental Reform ("Committee") informed Plaintiff that his use of unofficial email addresses while at the LPO could violate a variety of federal statutes, including some punishable by criminal or civil penalties. *Id.* (Enclosure: Jul. 12, 2012 Letter from D. Issa, J. Jordan to J. Silver). The Committee instructed him to produce documents for its ongoing investigation into the loan guarantee program. *Id.*

On or about December 20, 2011, Plaintiff's counsel contacted American Safety to provide notice of the proceedings

pending and to request legal counsel under the Policy. Compl. ¶¶ 28–29. Between December 20, 2011 and January 18, 2013, Plaintiff's counsel and various representatives of American Safety corresponded regarding the Policy. Compl. ¶¶ 29–30; Compl. Exs. B–F.

In written correspondence, American Safety acknowledged that the proceedings involving Plaintiff qualified as "disciplinary proceedings" under Section II of the Policy. Compl. Ex. C, Oct. 8, 2012 letter from D. Sherman to J. Silver ("Oct. 8, 2012 Letter"). However, defendant denied the claim:

> We regret to inform you that there is no coverage afforded to you for this disciplinary proceeding. Your "Insured Member" status effectively terminated upon your resignation from federal service on or about October of 2011. Your first notice to American Safety was . . . after your resignation was finalized and your "Insured Member" status expired. Accordingly, you reported this investigation after your policy ceased to provide you with coverage.

*Id.* p.3.[1]

Plaintiff filed this lawsuit on April 30, 2013. Count One alleges breach of contract; Count Two alleges breach of the duty of good faith and fair dealing. After filing an Answer,

---

[1] The parties dispute the date plaintiff first notified American Safety of the proceedings against him. Plaintiff contends he provided notice in December 2011; defendant claims it was July 2012. At the motion for judgment on the pleadings stage, the Court takes the facts in the Complaint as true. As set forth below, however, the relevant date in this case is October 2011, when Plaintiff resigned from government employment. As both December 2011 and July 2012 occur after that date, the parties' disagreement is irrelevant.

5

American Safety moved for judgment on the pleadings and Mr. Silver cross-moved for partial summary judgment.  The motions are ripe for resolution by the Court.

**II.  STANDARD OF REVIEW**

A Rule 12(c) motion is "functionally equivalent" to a Rule 12(b)(6) motion and governed by the same standard.  *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012).  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quotation marks omitted; alteration in original).  While detailed factual allegations are not necessary, plaintiff must plead enough facts "to raise a right to relief above the speculative level." *Id.*

"The court is limited to considering acts alleged in the complaint, and documents attached to or incorporated by reference in the complaint, matters of which the court may take judicial notice, and matters of public record." *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007) (internal citations omitted).  The Court must construe the complaint

liberally in plaintiff's favor and grant plaintiff the benefit of all reasonable inferences deriving from the complaint. *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). However, the Court must not accept plaintiff's inferences that are "unsupported by the facts set out in the complaint." *Id.* "Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

**III. ANALYSIS**

**A. Choice of Law**

Federal courts sitting in diversity must apply the conflicts of laws rules of the state in which they sit. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496—97 (1941). Therefore, this Court applies the District of Columbia's choice of law analysis. In insurance cases, where the insured is a citizen of the District of Columbia and the underlying events occurred here, courts have held that D.C. law applies. *See, e.g., Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 2001).

The parties agree that District of Columbia law applies because the insured, Plaintiff, is a citizen of the District, the investigations which gave rise to his claim for coverage took place here, and the legal services for which he seeks

coverage were provided in the District of Columbia. Compl. ¶¶ 2, 6-8, 23-25, Compl. Ex. A; *see also* Def.'s Mot. for Judgment on the Pleadings ("Def.'s Mot.") at 7—8.

   **B. Defendant's Motion for Judgment on the Pleadings**

   1. Breach of Contract

American Safety contends that Mr. Silver's resignation from government employment in October 2011 – before he became involved in any disciplinary proceedings or criminal proceedings – renders him ineligible for coverage under Section II relating to these proceedings. Def.'s Mot. at 10.[2] The insurer focuses on two provisions of the Policy. First is Condition B of the Policy's Section II Coverage, which provides "Benefits under **Administrative and Criminal Legal Defense Coverage** cease when the "Insured Member" no longer meets the definition of "Insured Member"". Policy § VII.B (emphasis in original). Second is the definition of an "Insured Member," which is restricted, in relevant part, to full or part-time civilian federal employees. Policy § IV.H.1. Defendant argues that these two provisions unambiguously state that coverage under Section II "ends when an insured ceases to be a federal government employee." Def.'s Mot. 11. The Complaint alleges that Mr. Silver left federal government employment in October 2011, and the investigations

---

[2] Plaintiff only claims benefits under Section II of the Policy: Administrative and Legal Defense Expense Coverage. See, e.g., Compl. ¶ 48.

8

for which he seeks coverage did not begin until the following month, November 2011. Compl. ¶ 9, Ex. B, Oct. 3, 2012 Letter. Accordingly, defendant argues, the Policy does not cover plaintiff's claim. Def.'s Mot. 11.

"An insurance policy is a contract between the insured and the insurer, and in construing it [a court] must first look to the language of the contract." *Cameron v. USAA Prop. & Cas. Ins. Co.*, 733 A.2d 965, 968 (D.C. 1999). If that language is not ambiguous, "the policy must be enforced as written, absent a statute or public policy to the contrary." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 445 F. Supp. 2d 37, 41 (D.D.C. 2006) (citing *Cameron*, 774 A.2d at 968–69). "The first step in contract interpretation is determining what a reasonable person in the position of the parties would have thought the disputed language meant . . . . The writing must be interpreted as a whole, giving a reasonable, lawful, and effective meaning to all its terms" – "[i]f a document is facially unambiguous, its language should be relied upon as providing the best objective manifestation of the parties' intent." *1010 Potomac Assocs. v. Grocery Mfrs. of America*, 485 A.2d 199, 205 (D.C. 1996) (citations omitted). If that language is ambiguous, "extrinsic evidence of the parties' subjective intent may be resorted to[,]" *id.*, and courts typically "interpret any ambiguous provisions in a manner consistent with the reasonable

expectations of the purchaser of the policy," *Cameron*, 733 A.2d at 968 (citations omitted). "A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible of more than one meaning. A contract is not ambiguous merely because the parties disagree over its meaning." *Nat'l R.R. Passenger Corp. v. Lexington Ins. Co.*, 2003 U.S. Dist. LEXIS 26405, at *15 (D.D.C. May 20, 2003) (citations omitted).

Plaintiff first contends that Condition B, which states that "benefits" under Section II "cease when the "Insured Member" no longer meets the definition of "Insured Member"", should be read to provide recovery for his legal expenses. He claims that the term "benefits" should be interpreted narrowly as "the entitlement to coverage for any future acts, errors, or omissions. Under this interpretation, [Condition B] would only bar recovery for prospective acts or omissions . . . that occur after the former employee leaves government service." Pl.'s Opp'n and Cross Mot. at 16 ("Pl.'s Opp'n").

Plaintiff's reading of Condition B cannot be reconciled with the provision's language or the Policy's grant of coverage under Section II. The grant of coverage under Section II only applies to "disciplinary proceedings", "judicial sanctions proceedings", "criminal proceedings", or other investigations "instituted against the "Insured Member" from any act, error or

10

omission in Professional Services rendered or which should have been rendered in the "Insured Member's" professional capacity as a full or part-time Employee of the United States Government." Policy § II.A.  The grant of coverage unambiguously limits coverage to the alleged professional errors or omissions of a government employee.  Plaintiff's proffered interpretation of Condition B would merely repeat the exact same limitation, thus rendering it "useless, . . . meaningless or superfluous and, hence" his interpretation "should be rejected."  *Anderson v. D.C. Hous. Auth.*, 923 A.2d 853, 867 (D.C. 2007) (citations omitted).

Plaintiff next contends that the definition of "Insured Member" is ambiguous because its use in Condition B is "inconsistent with how [the term] is used in numerous other provisions of the . . . Policy."  Pl.'s Opp'n at 20-21 (discussing the Policy's definition of "claims," *see* Policy § IV.B and the provisions of the Automatic Extended Reporting Period, *see* Policy § I.B). Plaintiff fails to point out, however, that these "numerous other provisions" to which he refers all relate solely to the Policy's coverage for Civil Suit Liability under Section I, which is distinct from Section II coverage and which does not apply to this case.  *Id.*, see also Def.'s Reply at 5-6.  Moreover, the Policy's definition of "Insured Member" unambiguously includes current, not former,

11

federal employees. Policy § IV.H.  To the extent that the Policy provides certain extensions of coverage for a defined universe of *civil* claims under Section I, this does not create an ambiguity either in the definition of "Insured Member" or its application to non-civil, Administrative and Criminal Legal Defense claims under Section II.  *See, e.g.*, *1010 Potomac Assoc.*, 485 A.2d at 205 ("[T]he [contract] must be interpreted as a whole, giving a reasonable, lawful and effective meaning to all its terms.")(citations omitted).

    Finally, the Plaintiff contends that American Safety's interpretation of the policy would render coverage under Section II illusory because it would deny coverage for "disciplinary proceedings" or "criminal proceedings" which occurred after Plaintiff left government employment but before the expiration of his Policy Period.  Plaintiff argues that this interpretation of the policy denies coverage "exactly when [defendant's] policy holders most need, and reasonably expect, the insurance coverage that they purchased."  Pl.'s Opp'n at 23.  The Court disagrees that coverage is illusory as a matter of law.  The Policy provides current government employees with coverage for civil suits under Section I, and defense costs associated with certain administrative or criminal proceedings under Section II.  In certain circumstances, coverage under Section I is extended beyond the Policy Period and beyond the policyholder's

resignation from government employment. Policy §§ I.A, I.B, IV.B, IV.H, VI. Coverage under Section II, by contrast, always ceases at the end of government employment. Policy §§ II, IV.H, VII.B. While the coverage afforded under Section II is undoubtedly more limited than Section I, the Court cannot say that it "is non-existent or de minimis," *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1131 (D.C. 2001), and therefore illusory or otherwise invalid as a matter of public policy.

Without saying so expressly, Plaintiff's argument is based on the "reasonable expectations" doctrine, in which courts generally interpret ambiguous provisions in a manner consistent with the reasonable expectations of the purchaser of the policy. *Chase*, 780 A.2d at 1131. This is not a "reasonable expectations" case. When unambiguous, all provisions of a contract, even exclusion provisions, "must be enforced even if the insured did not foresee how the exclusion operated, otherwise courts will find themselves in the undesirable position of rewriting insurance policies and reallocating assignment of risks between insurer and insured." *Capitol Specialty Ins. Corp. v. Sanford Wittels & Heisler LLP*, 793 F. Supp. 2d 399, 409 (D.D.C. 2011) (internal citations and quotation marks omitted).[3] "If the policies are clear and

---

[3] The parties disagree whether Condition B operates as a condition precedent or an exclusion, and thus whether it is

13

unambiguous, they will be enforced by the courts as written."
*Chase*, 780 A.2d at 1132 (internal quotations omitted).[4]

For the foregoing reasons, coverage under Section II of the Policy unambiguously ceased when Plaintiff resigned as a government employee in October 2011. Accordingly, American Safety is entitled to judgment on the pleadings on Count One of the Complaint because the facts alleged and exhibits presented in the Complaint, even when accepted as true, establish that the Policy does not cover plaintiff's claim.

---

plaintiff's burden to bring himself within the terms of the policy or defendant's burden to demonstrate the applicability of an affirmative defense. Compare Def.'s Mot. at 9—10; Pl.'s Opp'n at 10—14. The distinction is irrelevant in this case; for the reasons set forth throughout, American Safety has met its burden under either standard.

[4] In opposing defendant's Motion for Judgment on the Pleadings, plaintiff also suggests that defendant may be estopped from relying on Condition B because, he alleges, "[defendant's] own claims administrator . . . never cited, let alone relied upon, [Condition B]." Pl.'s Opp'n at 18—19. This argument is unpersuasive. In its October 8, 2012 letter to plaintiff's counsel, defendant's representative, although not specifically quoting Condition B, stated "We regret to inform you that there is no coverage afforded to you for this disciplinary proceeding. Your "Insured Member" status effectively terminated upon your resignation from federal service on or about October of 2011. Your first notice to American Safety Indemnity Company of this disciplinary proceeding was . . . after your resignation was finalized and your "Insured Member" status expired. Accordingly, you reported this investigation after your policy ceased to provide you with coverage." Compl. Ex. C, p.3. Plaintiff's contrary reading of the letter, therefore, cannot be sustained.

### 2. Bad Faith/Breach of Duty of Fair Dealing

The parties disagree whether the District of Columbia recognizes a tort of bad faith/breach of fair dealing in insurance claims handling. Compare Def.'s Mot. at 11—14; Pl.'s Opp'n at 24. Their disagreement need not be resolved here, because the parties agree that such a claim, if it exists, would arise only where an insurance company failed to pay a covered claim. Def.'s Mot. at 13 n.4, Pl.'s Opp'n at 24. Because the Court has determined that American Safety did not breach the contract, plaintiff's bad faith claim cannot succeed. Accordingly, American Safety is entitled to judgment on the pleadings on Count Two of the Complaint.

### 3. Plaintiff's Motion for Summary Judgment

Plaintiff filed a cross-motion for partial summary judgment on Count One of the Complaint. Because the Court grants defendant's motion for judgment on the pleadings, it is unnecessary to reach the cross-motion for partial summary judgment. Accordingly, plaintiff's cross motion will be denied as moot.

**IV. CONCLUSION**

For the foregoing reasons, defendant's Motion for Judgment on the Pleadings is hereby **GRANTED** and plaintiff's Cross-Motion

15

for Partial Summary Judgment is hereby **DENIED** as moot.  An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**March 26, 2014**